**Antoine v New York City Health & Hosps. Corp.**

2026 NY Slip Op 30735(U)

February 27, 2026

Supreme Court, Kings County

Docket Number: Index No. 18394/2010

Judge: Consuelo Mallafre Melendex

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, MMESP7 of the
Supreme Court of the State of NY, held
in and for the County of Kings, at the
Courthouse, at 360 Adams Street,
Brooklyn, New York, on the 27th day of
February 2026.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-----------------------------------------------------------------------X
PYTHAGORE ANTOINE, as Administrator of the Estate of
MARIE ALICE PIERRE-PAUL, deceased,

      Plaintiff,

   -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION, BROOKDALE UNIVERSITY HOSPITAL
and SCHULMAN AND SCHACHNE INSTITUTE AT THE
BROOKDALE HOSPITAL AND MEDICAL CENTER,

      Defendants.
-----------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 18394/2010
Mo. Seq. 8

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
<u>NYSCEF #s:</u> 27 – 49, 51 – 56, 57 – 59

     Defendants Brookdale University Hospital ("Brookdale") and Schulman and Schachne

Institute at the Brookdale Hospital and Medical Center ("SSI") move (Seq. No. 8) for an Order,

pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's

Complaint against them in its entirety.

     Plaintiff opposes the motion.

     Marie Alice Pierre-Paul ("Decedent") commenced the action on July 26, 2010, arising

out of care and treatment she received at Brookdale and SSI. The Decedent passed away on July

24, 2015. An amended complaint was filed by the administrator of Decedent's estate as Plaintiff,

Pythagore Antoine, on March 3, 2017.

1

[* 1]

The claims against the moving Defendants arise from prevention and treatment of a sacral pressure ulcer, specifically during Decedent's continuous admission to Brookdale and SSI from May through November 2009.

From March 14, 2009, through May 8, 2009, the 45-year-old Decedent was admitted to Kings County Hospital for multiple issues, including multiple sclerosis, obesity, severe iron deficiency anemia, uterine fibroid with heavy uterine bleeding, and various skin conditions. While admitted, she was diagnosed with neuromyelitis optica. Decedent developed a small pressure ulcer to her sacrum and her general condition was noted to have deteriorated during her admission to Kings County Hospital.[1]

On May 8, 2009, Decedent was transferred from Kings County Hospital to SSI and was admitted with a stage II sacral pressure ulcer measuring 2 x 0.5 cm. As of May 25, 2009, the pressure ulcer was noted to be "healed."

Decedent was transferred from SSI to Brookdale on June 15, 2009. Upon admission, there was no documentation of a rash or pressure ulcers, though Decedent was ordered daily application of Tegaderm to the sacral area, and she continued her nutritional supplements. On June 23, 2009, Decedent was ordered to be turned every two hours, have dressing changes from sacral stage II to normal saline cleansings, and dry sterile dressing changes every three days, and she was given nutritional supplements. Records show that from May 25 through June 25, there was no documentation that Decedent had a pressure ulcer. On June 25, 2009, Decedent was documented to have a stage II sacral ulcer measuring 5 x 4 x 0.5 cm. The Patient Care Plan noted preventive interventions including pressure relieving mattress, turning and repositioning, and nutritional intake.

---

[1] New York City Health and Hospitals Corporation settled with Plaintiff on October 26, 2018.

[* 2]

Decedent was readmitted to SSI on July 1, 2009; the sacral ulcer was noted to be stage III, measuring 8 x 8 x 0.5 cm. By July 8, 2009, the presence of necrotic tissue was noted. Decedent underwent a surgical debridement on July 15. By July 17, the sacral pressure ulcer was noted as stage IV and measured 10 x 10 x 4.5 cm. Another debridement was performed on July 20, and the wound was noted as improved. Decedent underwent additional debridements on July 24 and July 31. On August 21, the sacral ulcer measured 8 x 6.5 x 6 cm, when the wound was debrided again. The wound was then described as having improved after administering intravenous antibiotics during the admission.

Decedent was transferred to Brookdale on August 22, 2009, and she underwent another surgical debridement and received new orders to treat the ulcer. The ulcer measured 8 x 5 x 3 cm with tunneling. On August 25, the pressure ulcer measured 9 x 5 x 5 cm and was debrided on August 26, with the operative report documenting an abscess of the sacro-coccygeal area involving the bone.

On August 27, 2009, Decedent was transferred back to SSI with a stage IV sacral pressure ulcer measuring 8 x 7 x 6 cm.

Decedent was transferred to Brookdale on September 27, 2009. On September 28, the sacral pressure ulcer was documented as clean and stage IV, and on September 29, the ulcer measured 8 x 6 x 4 cm.

Decedent was readmitted to SSI on October 1, 2009, with the sacral pressure ulcer noted as stage IV and measuring 7 x 3 x 3.5 cm. Decedent was admitted to Brookdale on October 4, where the ulcer was described as stage IV and more than 4 cm in diameter. Decedent returned to SSI the same day. On October 26, there was a small area of necrotic tissue documented on the left side of the ulcer.

3

[* 3]

Decedent was transferred to Brookdale on October 27, 2009, and the sacral ulcer was documented as measuring 8 x 6 x 4.6 cm with tunneling. On October 29, Decedent had a bedside debridement performed. Decedent remained at Brookdale through November 3, 2009, marking the end of the treatment she received from Defendants.

Decedent was transferred to Coler Goldwater on November 4, 2009, for further treatment of the sacral pressure ulcer she allegedly sustained at Brookdale and SSI. On November 25, a CT scan of the sacrum revealed a sacral decubitus ulcer extending to the inferior coccyx and sacrum with boney erosion and abnormal inferior presacral soft tissue.

On February 24, 2010, Decedent underwent a myocutaneous flap procedure of the sacrum with intravenous antibiotics for six weeks. Decedent was noted to have had a well-healed surgical incision by March 26, 2010. In early May 2010, Decedent had intact skin, but by May 11, 2010, she was noted to have an open area on the right buttock. On May 18, a CT scan of the pelvis documented that the sacral ulcer was healed and there was no evidence of acute osteomyelitis. On several occasions in August 2010 and January 2011, the surgical incision scar re-opened and healed. Two areas of the sacral flap surgical scar had opened by June 8, 2011, and the surgical scar re-opened again by August 2011. By October 26, 2011, the open scar on the sacral wound was noted as healed.

On July 24, 2015, the Decedent passed away.

Plaintiff alleges that Brookdale and SSI deviated from the standard of care in the prevention and treatment of Decedent's sacral pressure ulcer, including by failure to implement a care plan in a timely manner. Plaintiff further alleges that these departures proximately caused the development and/or worsening of Decedent's pressure ulcer.

4

[* 4]

In evaluating a summary judgment motion in a medical malpractice action, the Court applies the burden shifting process as summarized by the Second Department: "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure" (*Rosenzweig v Hadpawat*, 229 AD3d 650, 652 [2d Dept 2024]). "In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars" (*Martinez v Orange Regional Med. Ctr.*, 203 AD3d 910, 912 [2d Dept 2022]). "Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (*Rosenzweig* at 652 [2d Dept 2024] [internal quotation marks and citations omitted].) However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home*, 213 AD3d 896, 898-899 [2d Dept 2023]).

In support of their motion (Seq. No. 8), Brookdale and SSI submit an expert affirmation from Barbara Tommasulo, M.D. ("Dr. Tommasulo"), a licensed physician board certified in internal medicine and in geriatric medicine.

Dr. Tommasulo opines that all treatment and care rendered by the physicians, nurses, and staff at Brookdale and SSI were in accordance with the standard of care during Decedent's various admissions from May through November 2009. With respect to preventative care, Dr. Tommasulo opines that appropriate and necessary interventions and treatments of Decedent's comorbidities were provided, including nutritional supplements, appetite stimulants, and feeding

5

assistance. She opines that appropriate skin care plans within the standard of care were initiated and implemented, including use of pressure relieving and air mattresses, turning and repositioning, incontinent management, wound dressings, and cleansing agents as ordered. She references documentation of Braden risk scoring, nursing flowsheets reflecting daily assessments and preventative interventions, and frequent turning and repositioning. Dr. Tommasulo further opines that there were occasions when Decedent refused treatment, including refusal of physical therapy, refusal to remain positioned on her side, removal of propping pillows despite explanation, and refusal of certain medications, and that such conduct limited the effectiveness of preventative measures.

On the issue of proximate causation, Dr. Tommasulo opines the worsening of Decedent's sacral pressure ulcer was unavoidable despite proper treatment. Dr. Tommasulo opines that Decedent had an overall compromised condition, was unable to ambulate due to multiple sclerosis, and was in a "stressed" catabolic state. She opines that Decedent was administered high doses of corticosteroids and immunosuppressant medications for multiple sclerosis and neuromyelitis optica, which impaired her ability to heal, contributed to skin breakdown, and increased susceptibility to infection. Dr. Tommasulo further notes that Decedent's anemia and hypertension further increased skin vulnerability and impaired healing.

Dr. Tommasulo opines that despite the implementation of all reasonable and necessary preventative interventions and wound treatments, the sacral wound inevitably progressed in size and staging due to Decedent's extensive comorbid medical conditions, necessary medications, nutritional compromise, immobility, and the inescapable pressure and shear inherent in daily care over a prolonged admission. She opines that Defendants rendered proper skin care, did not depart from the standard of care, and that Decedent's skin injuries, impaired healing, and alleged

6

damages were not causally related to any care and treatment rendered by Brookdale or SSI, but were unavoidable given her condition.

Based on the submissions, Defendants have established prima facie entitlement to summary judgment on the issues of standard of care and proximate causation, by setting forth expert opinions that Brookdale and SSI complied with the applicable standard of care and that different treatment would not have prevented the development or progression of Decedent's sacral pressure ulcer. The burden therefore shifts to Plaintiff to raise a triable issue of fact.

In opposition, Plaintiff submits an expert affirmation from Marc Shepard, M.D. ("Dr. Shephard"), a licensed physician board certified in internal medicine.

Dr. Shepard opines that Defendants departed from the standard of care in several instances in preventing and treating Decedent's sacral pressure ulcer and that these departures proximately caused her claimed injuries. Specifically, Dr. Shepard states that Brookdale and SSI's treatment plans were not properly or timely implemented or appropriately documented, and that such departures led to the development and progression of the ulcer, necessitating multiple debridements, intravenous antibiotics, and prolonged care.

Dr. Shepard opines that there was a failure to timely implement a pressure ulcer prevention strategy upon Decedent's admission to Brookdale on June 15, 2009. The expert opines that while Decedent did not have a documented pressure ulcer upon admission, she received a Braden Scale score of 18 and required a pressure ulcer prevention plan, but that no such plan was initiated until June 23, 2009. Two days after initiating the plan, on June 25, the Decedent was documented to have a stage II pressure ulcer and her Braden score had dropped to 14. Dr. Shepard opines that from June 15 to June 23, eight days elapsed without implementation of a pressure ulcer preventative protocol despite documented risk for skin breakdown. According

7

[* 7]

to Dr. Shepard, the failure to timely implement preventative measures upon admission and the eight-day delay in initiating a pressure ulcer prevention protocol constituted departures from the standard of care.

While Defendants' expert opines that the ulcer's progression was inevitable due to Decedent's comorbidities, medications, nutritional compromise, and refusals of care, Plaintiff's expert opines that the extent of Decedent's pressure ulcers was avoidable. Dr. Shepard opines that given Decedent's multiple comorbidities increasing her skin breakdown risk, as well as her history of a stage II sacral pressure ulcer, the standard of care required strict adherence to pressure prevention protocols and that the lack of such adherence resulted in the progression of the ulcer.

He opines that Defendants failed to initially implement systematic screening with score and risk stratification, including failing to document Decedent's pressure ulcer when it was stage I. Dr. Shepard also contests Dr. Tommasulo's reliance on documentation referencing pressure relieving mattresses and preventative measures, noting that the record lacks precise documentation of when a pressure relieving device was placed. Specifically, he observes that the planned intervention for a pressure relieving mattress was dated June 27, two days after documentation of a stage II ulcer on June 25, four days after the initiation of the pressure ulcer prevention plan on June 23, and twelve days after Decedent's admission to Brookdale on June 15. Dr. Shepard further opines that the documentation of turning and repositioning was also inconsistent and improperly recorded, making it unclear whether such measures were performed on specific dates.

On the issue of proximate causation, Dr. Shepard opines that the above delays in proper assessment and implementation of treatment plans for Decedent's pressure ulcer led to its

8

degradation and limited healing. Dr. Shepard also counters the Defendants' expert opinion that the claimed injuries were inevitable, stating that the failure to implement preventative measures for eight days deprived the Decedent of a better outcome. Plaintiff's expert states that given Decedent's Braden score of 18 and her history of a stage II sacral pressure ulcer, a pressure prevention plan should have been implemented on June 15, 2009. Moreover, the record notes a two-day delay between the documentation of Decedent's stage II ulcer and Braden score of 14 on June 25 and the implementation of a pressure relieving mattress as part of the pressure prevention plan on June 27. The expert opines that preventative measures should have been implemented upon admission on June 15, 2009, and that these delays and failures caused the Decedent's ulcer to develop and allowed it to progress to stages III and IV.

As discussed above, Plaintiff's expert opines that Decedent's comorbidities increased her skin breakdown risk but that the failure to implement preventative measures on admission to Brookdale on June 15, 2009, was a clear deviation and departure from the standard of care. The expert opines that while the Decedent's comorbidities contributed to Defendants' alleged departures from the standard of care having a "catastrophic effect," proper pressure ulcer protocol was not implemented. Dr. Shepard states that the departures in treatment allowed the pressure ulcer to progress to stage IV.

Plaintiff's expert offers a conflicting opinion that the worsening of Decedent's sacral pressure ulcer could have been prevented with the proper assessment and timely and consistent treatment, and the movants' failure to timely and consistently implement a treatment plan deprived Decedent the chance to avoid developing a stage IV sacral pressure ulcer that required multiple debridements and prolonged intervention and care. The record indicates that when the Decedent was admitted to Brookdale on June 15, 2009, her sacral pressure ulcer had healed. The

9

[* 9]

first indication that the patient had a recurring stage II wound was noted on June 25. Between June 15 and June 23, protocols to prevent pressure ulcers were not documented in the record. Plaintiff's expert opines that this was a deviation from the standard of care. The expert also thoroughly considers the effect of the patient's co-morbidities on prevention, development and treatment of the sacral ulcer. The Court finds that his opinions are detailed and based on the records submitted with this motion. Plaintiff has thus raised triable issues of fact that preclude summary judgment. Plaintiff also raises issues of fact on whether these departures were the proximate cause of the development and deterioration of Decedent's pressure ulcer, as well as Decedent's injuries claimed herein.

Accordingly, Defendants' motion for summary judgment (Seq. No. 8) is denied.

It is hereby:

**ORDERED** that Brookdale and SSI's motion (Seq. No. 8) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's Complaint against them in its entirety, is **DENIED**.

This constitutes the decision and order of this Court.

**ENTER.**

_____

**Hon. Consuelo Mallafre Melendez
J.S.C.**

10